**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**CRAIG R. ROTH,**

                              **Plaintiff,**

        **v.**                                                    **11-CV-00535**

**COMMISSIONER OF SOCIAL SECURITY,**

                              **Defendant.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

**DECISION & ORDER**

**I.  INTRODUCTION**

        Plaintiff Craig R. Roth brought this suit under the Social Security Act ("Act"), 42

U.S.C. §§ 405(g), 1383(c)(3), to review a final determination of the Commissioner of

Social Security ("Commissioner") denying his application for disability insurance benefits

("DIB") and Supplemental Security Income ("SSI").  Plaintiff alleges that the decision of the

Administrative Law Judge ("ALJ") denying the applications for benefits is not supported by

substantial evidence and contrary to the applicable legal standards.  The Commissioner

argues that the decision is supported by substantial evidence and made in accordance

with the correct legal standards. Pursuant to Northern District of New York General Order

No. 8, the Court proceeds as if both parties had accompanied their briefs with a motion for

judgment on the pleadings.

## II. BACKGROUND

### A. Procedural History

On March 19, 2008, Craig R. Roth protectively filed a Title II application for disability insurance benefits and a Title XVI application for supplemental security income. In both applications, Plaintiff alleged disability beginning December 5, 2007. These claims were initially denied on April 29, 2008 and Plaintiff filed a written request for hearing on May 21, 2008.  Plaintiff appeared and testified at a hearing held on December 22, 2009, in Syracuse, N.Y., held before Administrative Law Judge Elizabeth W. Koennecke.  Plaintiff was  represented by counsel.  At the hearing, the only exhibit that Plaintiff's representative objected to was a physical residual functional capacity assessment of Plaintiff completed by a state-agency disability examiner. Plaintiff's representative objected to this report on the grounds that it was not a medical report.  Plaintiff's representative also stated at the hearing that he was awaiting a report from Plaintiff's treating rheumatologist, Dr. Rarnzi Khairallah, and that nobody would complete a residual functional capacity assessment on behalf of Plaintiff. The ALJ held the record open until January 2, 2010 for the submission of rheumatology records or any other reports, including reports from Dr. Khairallah. After noting the above issues, Plaintiff's representative stated that the administrative record was complete and the ALJ then proceeded to render a determination.

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31,  2012.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 5, 2007, the alleged onset date.

Tr. 12.  At step two, the ALJ found that Plaintiff had the severe impairments of cervical and lumbar spondylosis (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

Next, the ALJ  found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listing impairments in 20 C.F.R.§§ Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).  The ALJ then concluded that, after consideration of the entire record, Plaintiff has the residual functional capacity to perform the full range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), in that the claimant can occasionally lift and/or carry ten pounds and frequently lift and/or carry less than ten pounds, stand and/or walk about six hours in an eight-hour workday, sit for about six hours in an eight-hour workday, and has an unlimited capacity to push and/or pull.

Considering Plaintiff's residual functional capacity, age (44 years old), education (high school education ), and work experience, the ALJ determined that Plaintiff was able to perform jobs that exist in significant numbers in the national economy.  Accordingly, the ALJ concluded that Plaintiff had not been under a "disability," as that term is defined under the Act, and was, therefore, not entitled to benefits.  The ALJ's decision became the Commissioner's final decision on March 18, 2011 when the Social Security Administration Appeals Council denied Plaintiff's request for review.

Plaintiff makes several arguments challenging the Commissioner's decision, which the Court will address seriatim.

3

## III. DISCUSSION

### A. Standard of Review

The Court's review of the Commissioner's determination is limited to two inquiries. *See* 42 U.S.C. § 405(g). First, the Court determines whether the Commissioner applied the correct legal standard. *See Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999); *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998); *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990); *Shane v. Chater*, No. 96-CV-66, 1997 WL 426203, at *4 (N.D.N.Y July 16, 1997)(Pooler, J.)(citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)). Second, the Court must determine whether the Commissioner's findings are supported by substantial evidence in the administrative record. *See Tejada*, 167 F.3d at 773; *Balsamo*, 142 F.3d at 79; *Cruz*, 912 F.2d at 11; *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982). A Commissioner's finding will be deemed conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *see also Perez*, 77 F.3d at 46; *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)("It is not the function of a reviewing court to determine de novo whether a Plaintiff is disabled. The [Commissioner's] findings of fact, if supported by substantial evidence, are binding.")(citations omitted). In the context of Social Security cases, substantial evidence consists of "'more than a mere scintilla'" and is measured by "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971)(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L. Ed. 126 (1938)). Where the record supports disparate findings and provides adequate support for both the Plaintiff's and the Commissioner's positions, a reviewing

4

court must accept the ALJ's factual determinations. *See Quinones v. Chater*, 117 F.3d 29, 36 (2d Cir. 1997)(citing *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir.1 982)); *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990). However, although the reviewing court must give deference to the Commissioner's decision, the Act is ultimately "'a remedial statute which must be "liberally applied;" its intent is inclusion rather than exclusion.'" *Vargas v. Sullivan*, 898 F.2d 293, 296 (2d Cir. 1990)(quoting *Rivera v. Schweiker*, 717 F.2d 719, 723 (2d Cir. 1983)).

**B. Analysis**

### 1. Non-exertional Impairments

Plaintiff argues that the ALJ erred by failing to consider the effects of Plaintiff's non-exertional impairments on his residual functional capacity and his ability to perform work existing in the national economy.  The Commissioner argues that the ALJ's determinations were amply supported by the record evidence. The Court agrees with the Commissioner.

Plaintiff's physical examinations throughout the relevant period often showed no notable abnormalities. Tr. 16. A neurological exam on April 2, 2008 was within normal limits. Tr. 343-45.  Examinations by Dr. Eng on June 5, 2008, January 12, 2009, and March 2, 2009 showed full strength and range of motion in all areas. Tr. 333-34, 338-39. Plaintiff also had a normal physical exam when he was examined by Dr. Weiskopf on April 11, 2008. Tr. 178-82.

Plaintiff contends that the ALJ should have credited his testimony that he had difficulty bending at the knees, twisting, reaching, squatting, crouching, and holding objects above his head. Pl. Br. at 3.  He further argues that the ALJ should have accepted

his testimony that he had limitations to concentration due to pain, fatigue, and numbness in his lower extremities. Pl. Br. at 4.  However, Plaintiff did not testify to several of the limitations now alleged in his brief.  Plaintiff testified that he did "not really" have any difficulty with twisting, and that he could squat or crouch, but not for long periods. Tr. 27, 30.  He further stated that he could lift his arms above his head, but was "not supposed to do [it] very much." Tr. 29.  Plaintiff also did not testify to any difficulties with concentration. Pl. Br. at 4; *see* Tr. 24-36.  Moreover, none of these alleged limitations are supported by the record.  As the Second Circuit has held, "the [Commissioner] is entitled to rely not only on what the record says, but also on what it does not say." *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983).  Because these limitations were not supported by the record, the ALJ properly did not include them in her RFC determination.

The ALJ also considered the impact of Plaintiff's subjective allegations of pain and other symptoms on his ability to work. Tr. 15-16.  An ALJ has discretion to evaluate the credibility of a claimant and to make an independent judgment based on medical findings regarding the true extent of the claimant's symptoms.  *Mimms v. Heckler*, 750 F.2d 180, 186 (2d Cir. 1984); *Dumas*, 712 F.2d at 1553.  It is the function of the Commissioner, not the reviewing court, to "resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Caroll v. Sec'y of Health and Human Serv.*, 705 F.2d 638, 642 (2d Cir. 1983); *see Gernavage v. Shalala*, 882 F. Supp. 1413, 1419 n. 6 (S.D.N.Y. 1995)(An ALJ's determination with respect to the credibility of witnesses is given great deference because the ALJ heard the testimony and observed the demeanor of the witnesses.). Further, Plaintiff must produce appropriate, probative evidence in support of

any subjective statements of symptoms, 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4), and

the ALJ's decision to discount Plaintiff's statements of symptoms must be accepted by a

reviewing court unless it is clearly erroneous. *Centano v. Apfel*, 73 F. Supp.2d 333, 338

(S.D.N.Y.1999).

When an individual has a medically determinable impairment that could reasonably

be expected to produce the symptoms alleged, but the objective evidence does not

substantiate the alleged intensity and persistence of the symptoms, the ALJ considers

other factors in assessing the individual's subjective symptoms. These factors include: (1)

Plaintiff's daily activities; (2) the nature, duration, frequency and intensity of his symptoms;

(3) precipitating and aggravating factors; (4) the type of medication and other treatment or

measures which Plaintiff uses to relieve pain and other symptoms; (5) treatment other

than medication Plaintiff has received for relief of pain and other symptoms; (6) any other

measures used by Plaintiff to relieve pain and other symptoms; and (7) other factors

concerning Plaintiff's functional limitations and restrictions due to pain or other symptoms.

*See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

Here, the medical evidence, including the objective testing, clinical examination

results and medical opinions, does not corroborate Plaintiff's subjective symptomatology

to the extent alleged. As the ALJ noted, Plaintiff's treatment notes reveal that his neck and

back pain was intermittent. Tr. 16.  A note from Dr. Eng on June 5, 2008 stated that

Plaintiff's back and neck pain had disappeared over the past two weeks. Tr. 16; *see* Tr.

338.  Again on July 24, 2008, Plaintiff told Dr. Eng that his neck and back pain had

resolved. Tr. 337.  Six months to a year after his cervical operation, Plaintiff reported that

he was doing well and feeling a lot better. Tr. 331-32.

7

Plaintiff's argument that his testimony regarding his symptoms is supported by an MRI of his cervical spine dated April 7, 2008, which showed a cervical disc impinging on the spinal cord, Pl. Br. at 4; *see* Tr. 313-14, is insufficient because the MRI was taken prior to his cervical disc surgery on November 14, 2008. Tr. 241, 251-52.  An x-ray dated after the surgery, on January 12, 2009, did not show disc impingement, but only a minimal anterolisthesis of C4 on C5. Tr. 301.  Plaintiff has not shown that any impairments resulting from the disc impingement observed in April 2008 persisted after his surgery, or that they lasted for the 12 months required by law. 20 C.F.R. §§ 404.1505(a), 416.905(a). Further, Plaintiff's treatment notes showed that he was doing well and had full ranges of motion in 2009. Tr. 333-34.   Moreover, Plaintiff has not demonstrated any specific functional limitations resulting from the impingement shown on the April 2008 MRI.

For a person to be found disabled within the meaning of the Act, it is not sufficient that he establish the mere presence of a disease or impairment. He must also show that the disease or impairment has caused functional limitations that preclude him from engaging in any substantial gainful activity. *Carroll v. Sec'y of Health and Human Svcs.*, 705 F.2d 638, 642 (2d Cir. 1983); *Monguer v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983); *Rivera v. Harris*, 623 F.2d 212, 215-16 (2d Cir. 1980).  Plaintiff failed to show that the impingement caused any significant functional limitations to preclude any work activity.

In addition, the ALJ noted that Plaintiff received only conservative treatment for his symptoms. Tr. 15.  Plaintiff testified that he primarily took homeopathic medicine, and occasionally took Tylenol or Motrin when his pain increased. Tr. 28.  He stated that his pain generally stayed at a level of 2 or 3 out of 10. Tr. 30.   When Dr. Khairallah suggested

8

an anti-inflammatory medication in September 2009, Plaintiff refused to take it.  Tr. 372.

There is no indication in the record that Plaintiff's failure to take the suggested pain

medication was due to any extraneous factors, and Plaintiff offered no such explanation

for his failure to take the medication. The type and dosage of medication taken by a

claimant for alleged pain is a factor that should be considered in assessing whether the

claimant's statements about his pain are credible. *See* Social Security Ruling ("SSR")

96-7p, 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv).

Further, Plaintiff's reports of his daily activities contradict his claims of disabling

pain.  He reported to Dr. Weiskopf that he could cook, clean, do laundry, shop, watch

television, and listen to radio. Tr. 178-79.  He testified that he recently sat for one and

one-half hours on a trip to Rhode Island, could stand for a couple of hours at a time, could

walk up to one mile, and could lift one gallon of milk. Tr. 29, 31.  These statements were

appropriately considered by the ALJ in making her determination.  20 C.F.R. §§

404.1529(c)(3), 416.929(c)(3).

At step 5 in the sequential evaluation, an ALJ is required to perform a two part

process to first assess Plaintiff's job qualifications by considering his physical ability, age,

education, and work experience, and then determine whether jobs exist in the national

economy that Plaintiff could perform. *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §

404.1520(f); *Heckler v. Campbell*, 461 U.S. 458, 460 (1983). The second part of this

process is generally satisfied by referring to the applicable rule of the Medical-Vocational

Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 ("the Grid"). *See Bapp*

*v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986).  "The Grid takes into account the claimant's

residual functional capacity in conjunction with the claimant's age, education and work experience. Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy." *Zorilla v. Chater*, 915 F. Supp. 662, 667 (S.D.N.Y.1996).[1]

"Generally the result listed in the Grid is dispositive on the issue of disability." *Id.* However, if the claimant has nonexertional impairments, the ALJ must determine whether those impairments "significantly" diminish the claimant's work capacity beyond that caused by his or her exertional limitations. *Id.* A claimant's work capacity is "'significantly diminished' if there is an 'additional loss of work capacity . . . that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.'" *Id.* (quoting *Bapp*, 802 F.2d at 606). If a claimant's work capacity is significantly diminished by non-exertional impairments beyond that caused by his or her exertional impairment(s), then the use of the Grids may be an inappropriate method of determining a claimant's residual functional capacity and the ALJ may be required to consult a vocational expert. *See Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996); *Bapp*, 802 F.2d at 604-605.

There was substantial evidence supporting the ALJ's determination that Plaintiff was able to perform the full range of sedentary work. *See* 20 C.F.R. §§ 404.1567(a), 416.967(a). Moreover, the ALJ was not required to consult a vocational expert because the record does not establish that Plaintiff's work capacity is significantly diminished by his

---

[1]"The Grid classifies work into five categories based on the exertional requirements of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and very heavy, based on the extent of requirements in the primary strength activities of  sitting, standing, walking, lifting, carrying, pushing, and pulling." *Zorilla*, 915 F. Supp. at  667 n. 2; *see* 20 C.F.R. § 404.1567(a). Upon consideration of the claimant's residual functional capacity, age, education, and prior work experience, the Grid yields a decision of "disabled" or "not disabled." 20 C.F.R. § 404.1569, § 404 Subpt. P, App. 2, 200.00(a).

asserted non-exertional impairments.

## 2. Assistive Device

Next, Plaintiff argues that the ALJ improperly failed to consider how Plaintiff's use of a cane affected his RFC. Pl. Br. at 5. In support of his claim that he needed a cane to ambulate, Plaintiff cites only to a note by Chiropractor Walslirf that "patient began to use a cane." Pl. Br. at 5; *see* Tr. 172. The chiropractor does not indicate that the cane was ever prescribed, either by him or by a medical source. Moreover, Plaintiff did not mention needing a cane in his testimony, in which he stated that he could walk up to a mile and could climb stairs. Tr. 31-32. There is also no other indication in the record that Plaintiff was ever prescribed a cane, or that he used a cane. Further, Plaintiff's gait was reported as normal during all the examinations in the record. Tr. 179, 339, 344-45.

In light of this, and for the reasons discussed above, the Court does not find that the ALJ erred by failing to assess the impact of Plaintiff's use of a cane on Plaintiff's RFC.

## 3. Disability Analyst

Next, Plaintiff argues that the ALJ committed reversible error by giving weight to the non-medical opinion of the disability analyst. A non-physician, state-agency disability analyst (a "single decision maker" or "SDM") "may make the initial disability determination in most cases without requiring the signature of a medical consultant." 71 FR 45890–01, 2006 WL 2283653. However, the Chief Administrative Law Judge for the Social Security Administration issued a memorandum citing POMS[2] Instruction DI 24510.050C and instructing all ALJs that RFC determinations by SDMs should not be afforded any

---

[2]The "POMS" is the Social Security Administration's "Program Operations Manual System," an internal manual used by Social Security employees to process disability claims.

evidentiary weight at the administrative hearing level.  Numerous courts have concluded, per this memorandum, that assigning any evidentiary weight to an SDM's opinion is an error. *See Yorkus v. Astrue*, No. 10-2197, 2011 WL 7400189, at *5 (E.D. Pa. Feb. 28, 2011) (collecting cases).

In her decision,[3] the ALJ stated that the disability analyst's opinion was entitled to "some weight," but specifically noted that the weight given to the report was reduced because it was not a medical report.  W. 17.  Plaintiff argues that, because the opinion is entitled to no weight, the ALJ's decision must be reversed. The Court disagrees.

The ALJ properly weighed the medical opinions of record[4] and assigned the greatest weight to the opinion of consultative examiner Dr. Weiskopf, whose evaluation was consistent with the ALJ's RFC for sedentary work. Tr. 17. The ALJ also gave weight to Dr. Eng's notes, which also supported the RFC. *Id.*  Because the ALJ did not give much weight to the disability analyst's opinion, and because the medical evidence record supports the ALJ's determination, this does not constitute a basis for remand. *See Lawton v. Astrue*, No. 1:08–CV-0137, 2009 WL 2867905, at *16 n.28 (N.D.N.Y. Sept. 2, 2009)(no error in assigning "only slight weight" to the opinion of a disability analyst).  Plaintiff has not demonstrated that he was prejudiced by the minimal weight afforded this opinion. *See Shinseki v. Sanders*, 129 S. Ct. 1696, 1706 (2009) (burden of showing harmful error "falls on the party attacking the agency's determination" )(citing *Nelson v. Apfel*, 131 F.3d 1228, 1236 (7th Cir. 1997); *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (remand

---

[3]Administrative Law Judge Koennecke issued her decision on February 17, 2010.

[4]As further discussed, *infra,* chiropractors are not acceptable medical sources under the Commissioner's regulations.

unnecessary where "application of the correct legal principles . . . could lead only to the same conclusion" (internal quotation marks and brackets omitted)); *Mitchell v. Astrue*, No. 09-CV-6301, 2010 WL3070094, at *4 (W.D.N.Y. Aug. 4, 2010) (remand inappropriate where Plaintiffs fails to show that any alleged error "was determinative of . . . the final RFC assessment"). Thus, the Court finds no reason for reversal on this ground.

4. **Chiropractor**

Plaintiff argues that the ALJ committed reversible error by improperly discounting the opinions of his treating chiropractor. The Court disagrees.

In determining whether a claimant is disabled, the social security regulations require "evidence from acceptable medical sources to establish whether [the claimant has] a medically determinable impairment." 20 C.F.R. § 404.1513(a). Section 404.1513 contains a list of acceptable medical sources. *Id.* Chiropractors do not appear on that list. *Id.* "[I]t would be inconsistent with these regulations to require the Secretary to give controlling weight to a chiropractor's opinion." *Diaz v. Shalala*, 59 F.3d 307, 313 (2d Cir. 1995). It is clear that the Commissioner is not required to give controlling weight to the opinion of a treating chiropractor.

Here, the ALJ did not "completely dismiss" Chiropractor Walslirf's opinion (as Plaintiff argues), but rather discussed the opinion and her reasons for according it only minimal weight. Tr. 17. The ALJ correctly noted that a chiropractor is not an "acceptable medical source" under the Commissioner's regulations. *See id.*; 20 C.F.R. §§ 404.1513(a), 416.913(a). Further, the Commissioner's regulations provide that the length of treatment is a factor to consider when evaluating treating source opinions. 20 C.F.R. §§

13

404.1527(d)(2)(i), 416.927(d)(2)(i).  The ALJ noted that Chiropractor Walslirf saw Plaintiff only four times between January 21, 2008 and February 1, 2008. Tr. 17; *see* Tr. 170.  The ALJ opined that this extremely short period of treatment could not have given Chiropractor Walslirf an accurate picture of Plaintiff's condition throughout the relevant period.

Still further, in evaluating evidence from sources who are not "acceptable medical sources," a factor to consider is how consistent the opinion is with other evidence in the record. See SSR 06-03p at 5 (setting forth factors to consider when evaluating evidence from sources that are not acceptable medical sources); 20 C.F.R. §§ 404.1513(d), 416.913(d).  The ALJ found that Chiropractor Walslirf's opinion was not consistent with the medical evidence of record, Tr. 17[5], which provided another reason to afford this opinion only minimal weight.  The Court does not find that the ALJ erred in this regard.

## V.  CONCLUSION

For the reasons set forth above, Plaintiff's motion for judgment on the pleadings is DENIED, the Defendant's motion is GRANTED, and the decision of the Commissioner is AFFIRMED .

**IT IS SO ORDERED**

**Dated: September 25, 2012**

Thomas J. McAvoy
Senior, U.S. District Judge

---

[5] The ALJ found that Chiropractor Walslirf's opinion was not consistent with the medical examinations, medical opinions, and objective testing in the record.